IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VICTOR BUYCK STEEL CONSTRUCTION : CIVIL ACTION
:
v. :
:
KEYSTONE CEMENT COMPANY : NO. 09-2941
:

## MEMORANDUM

**Stengel, J.**                                                    **March 30, 2010**

Victor Buyck Steel Construction and Keystone Cement Company entered into a

contract where Victor Buyck would provide steel to Keystone. Keystone stopped making

payments to Victor Buyck, who filed this lawsuit. Keystone answered the complaint, and

raised three counterclaims alleging breach of contract, promissory estoppel, and negligent

misrepresentation. Victor Buyck filed a motion to dismiss Keystone's negligent

misrepresentation claim, arguing the gist of the action doctrine bars the claim. For the

reasons discussed below, I will deny this motion.

## I.    BACKGROUND[1]

At its cement production facility in Bath, Pennsylvania, Keystone Cement

Company manufactures cements used in the construction of highways, bridges, and

---

[1] The below facts are viewed in the light most favorable to Keystone, the counterclaim
plaintiff. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (on motion to dismiss
court must accept the complaint's factual allegations as true, and draw all reasonable inferences
in the plaintiff's favor).

buildings.[2]  In 2006, Keystone began a project to expand this facility and solicited bids

from multiple contractors and suppliers.  Counterclaim at ¶¶ 2-3.  In response to this

solicitation, Victor Buyck Steel Construction submitted a bid.  Id. at ¶ 3.  Victor Buyck

asserted it would timely provide steel produced in conformity with the designer's

specifications, id. at ¶ 6, and assured Keystone it was capable of complying with the

American Institute of Steel Construction ("AISC") standards, id. at ¶ 8.  Keystone

selected Victor Buyck as its supplier.  Id. at ¶ 6.

Keystone and Victor Buyck entered into a contract in which Victor Buyck agreed

to provide structural steel to Keystone, to deliver the steel in stages at the agreed-upon

deadlines, and to detail and produce the steel per AISC standards.  Counterclaim at ¶¶ 8-

9.  This contract was modified according to the parties' agreement.  Id. at ¶ 8.

Keystone alleges "Victor Buyck misrepresented various facts including, but not

limited to the following: (1) that it would fabricate steel in accordance with the designs

supplied by Keystone and per AISC standards; (2) that it would deliver steel in

accordance with the agreed-upon schedules; and (3) that it would incorporate the

comments of the architect/engineer."  Counterclaim at ¶ 37.  Keystone maintains Victor

Buyck had "knowledge of its own capabilities and production capacity," and "knew or

should have known the falsity of such representations."  Id. at ¶ 38.

---

[2]  Answer and Counterclaims of Defendant/Counterclaim Plaintiff Keystone Cement
Company at Counterclaims at ¶ 1, Victor Buyck Steel Constr. v. Keystone Cement Co., No. 09-
2941 (E.D. Pa. filed Aug. 12, 2009) [hereinafter Counterclaim].

Keystone alleges Victor Buyck made the misrepresentations in order to induce Keystone to rely on them, choose Victor Buyck as its steel supplier, and agree to contract amendments. Id. at ¶ 39. Keystone alleges it justifiably relied on Victor Buyck's misrepresentations and was damaged because it agreed to "contract amendments, including a waiver of certain delay damages it would otherwise be entitled to pursue, and by incurring the additional expenses related to Victor Buyck's delivery of defective products, failure to incorporate the comments of the architect/engineer, and failure to meet the agreed-upon schedule." Id. at ¶ 40.

## II.    DISCUSSION

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

"[T]he gist of the action doctrine 'precludes a plaintiff from recasting a breach of

contract claim into a tort claim.'"[3] <u>DeFebo v. Anderson Windows, Inc.</u>, 654 F. Supp. 2d

285, 290 (E.D. Pa. 2009) (quoting <u>Penn City Inv. v. Soltech, Inc.</u>, 2003 WL 22844210, at

*2 (E.D. Pa. Nov. 25, 2003)). "For the tort action to survive, 'the wrong ascribed to [the]

defendant must be the gist of the action, the contract being collateral.'" <u>Id.</u> (quoting

<u>eToll, Inc. v. Elias/Savoin Adver., Inc.</u>, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)) (alteration

in original). "[T]he gist of the action doctrine 'is designed to maintain the conceptual

distinction between breach of contract claims and tort claims.'" <u>The Knit With v.</u>

<u>Knitting Fever, Inc.</u>, 2009 WL 3427054, at *4 (E.D. Pa. Oct. 20, 2009) (quoting <u>Etoll,</u>

<u>Inc.</u>, 811 A.2d at 14). "The important difference between contract and tort actions is that

the latter lie from the breach of duties imposed as a matter of social policy while the

former lie for the breach of duties imposed by mutual consensus." <u>Etoll, Inc.</u>, 811 A.2d at

14 (quoting <u>Redevelopment Auth. v. Int'l Ins. Co.</u>, 685 A.2d 581, 590 (Pa. Super. Ct.

1996)).

Although the gist of the action doctrine bars fraud in the performance claims, it

does not always bar fraud in the inducement claims.[4] <u>See</u> <u>Sullivan v. Chartwell Inv.</u>

---

[3] Although the Pennsylvania Supreme Court has not adopted the gist of the action
doctrine, the Pennsylvania Superior Court and United States District Court have predicted it will.
<u>The Knit With v. Knitting Fever, Inc.</u>, 2009 WL 3427054, at *4 n.2 (E.D. Pa. Oct. 20,
2009) (citing <u>Woods v. ERA Med. LLC</u>, 2009 WL 141854, at *6 n.11 (E.D. Pa. Jan 21, 2009)).

[4] Keystone alleges a negligent misrepresentation claim. Counterclaim at ¶¶ 37-38.
Courts discussing the gist of the action doctrine's applicability to fraud in the inducement claims,
also discuss negligent misrepresentation claims. <u>See, e.g.,</u> <u>CRS Auto Parts, Inc. v. Nat'l Grange</u>
<u>Mut. Ins. Co.</u>, 645 F. Supp. 2d 354 (E.D. Pa. 2009) (courts show "reluctance to dismiss claims
for fraud in the inducement or negligent misrepresentation"); <u>DeLage Landen Fin. Servs., Inc. v.</u>

4

Partners, L.P., 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (fraud in the inducement claim is collateral to contract performance and the gist of the action doctrine does not bar it); eToll, Inc., 811 A.2d at 17 (discussing with approval a case which stated fraud in the inducement claims were "not necessarily covered" by the gist of the action doctrine). Fraud in the inducement claims are "more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists." Air Prods. and Chemicals, Inc. v. Eaton Metal Prods., 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003).

The distinction between fraud in the performance claims and fraud in the inducement claims for application of the gist of the action doctrine "becomes somewhat problematic . . . where the alleged misrepresentations that induce a contract also constitute promises that form the contract's terms." A & L Precision Prods. v. Alloy Bellows & Precision Welding, Inc., 2009 WL 2959608, at *6 (W.D. Pa. Sept. 14, 2009). Federal courts differ on whether Pennsylvania's gist of the action doctrine bars a fraud in the inducement claim based on promises that became part of the contract. Compare, e.g., Johnson v. State Farm Life Ins. Co., 2010 WL 522333, at *10 (W.D. Pa. Feb. 8, 2010) (finding fraud in the inducement claim not barred where it requires inquiry into the "circumstances that precipitated the transaction"), with, e.g., Korn v. Kertesz, 2007 WL

---

Barton Nelson, Inc., 2008 WL 4791891, at *6-7 (E.D. Pa. Nov. 4, 2008) (discussing gist of the action doctrine's application to fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement); Padalino v. Standard Fire Ins. Co., 616 F. Supp. 2d 538, 549 (E.D. Pa. 2008) (discussing gist of the action doctrine's applicability to fraud and negligent misrepresentation).

3283400, at *6 (E.D. Pa. Nov. 6, 2007) (fraud in the inducement claim barred where it was based on pre-contractual promises of indemnity, for which the parties later contracted).

Keystone has not yet developed the facts in support of its negligent misrepresentation claim. At this stage of the litigation, I am unable to determine whether the gist of the action doctrine bars Keystone's negligent misrepresentation claim. See The Knit With, 2009 WL 3427054, at *7 ("courts have shown a reluctance to dismiss claims for fraud in the inducement and negligent misrepresentation early in the litigation"); Little Souls Inc. v. State Auto Mut. Ins. Co., 2004 WL 503538, at *3 (E.D. Pa. Mar. 15, 2004) (noting "[a]t this point in the litigation, it is difficult to ascertain whether the gist of the action doctrine would preclude plaintiff from asserting" the tort claims); Weber Display and Packaging v. Providence Washington Ins. Co., 2003 WL 329141, at *4 (E.D. Pa. 2003) (noting a court often cannot "determine whether the gist of the claim is in contract or tort," without further evidence); Foster v. Nw. Mut. Life, 2002 WL 31991114, at *3 (E.D. Pa. 2002) (finding the court does not "know whether [p]laintiff will be able to show that he was fraudulently induced to accept incomplete commission payments, as he alleges"). Accordingly, Victor Buyck's motion to dismiss will be denied.

An appropriate order follows.

6